UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LEONARD M. HICKMAN,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.

_____/

Case No. 2:23-cv-2

Honorable Jane M. Beckering

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff was previously granted leave to proceed *in forma pauperis*. (ECF No. 4). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims, as well as his Fifth and Fourteenth Amendment claims against remaining Defendants Suvanto, Derrick, and Unknown Party #1. Plaintiff's Eighth Amendment

claims against Defendants Suvanto, Derrick, and Unknown Party #1 in their individual capacities remain in the case.

## Discussion

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MDOC Director Heidi Washington and the following MBP officials and medical staff: Warden Erica Huss; Assistant Resident Unit Supervisor Erik Johnson; Grievance Coordinator Glenn Caron; Nursing Supervisor Unknown Party #1; Registered Nurses Kelly Suvanto, Jessica Wright, and Unknown Foster; Doctor Unknown Derrick; and Unknown Parties #2, named as the "total parent company – place of employee's [sic] and Michigan Department of Corrections <u>all</u> involved and other Defendant(s) [that] could possibly be added."[1] (Compl., ECF No. 1, PageID.7–9 (emphasis in original).) Plaintiff sues all Defendants in their official and individual capacities. (*See id.*, PageID.9.)

In Plaintiff's complaint, he alleges that he was provided inadequate medical care for his hernia and related pain. Specifically, Plaintiff alleges that on November 24, 2019, he was "experiencing great abdominal pain in the lower abdominal section of his stomach." (*Id.*, PageID.10.) Plaintiff reported to correctional officers that he was experiencing this pain and that he "felt a continuing growing lump, growing in his stomach." (*Id.*) Plaintiff "requested to be seen immediately by Healthcare Services." (*Id.*) Plaintiff "was denied to be seen by Healthcare, and was told to submit a healthcare kite." (*Id.*) Plaintiff submitted a kite, and "a couple of days later,"

---

[1] In this opinion, the Court corrects the capitalization and spelling in the quotations from Plaintiff's filings.

Plaintiff received a response from Defendant Suvanto, advising Plaintiff that he "was placed on a Health Service call-out to be triaged." (*Id.*)

By January 30, 2020, Plaintiff had not been called to medical, so he submitted another kite regarding the matter. (*Id.*) Thereafter, on February 2, 2020, Plaintiff was called to medical and was evaluated by Defendant Suvanto. (*Id.*) Plaintiff states that Defendant Suvanto "admitted to the medical neglect and malfeasance, of that, medical staff had forgotten to place the Plaintiff on the first call-out." (*Id.*) "Then a triage and medical assessment commenced," and Nurse Suvanto "did a quick lower abdominal check using her hand and diagnosed that there was a hernia detected." (*Id.*) Plaintiff "described to Defendant Suvanto the extreme pain he was in but wasn't given any treatment of the hernia nor any pain medication(s); nor told when he could be seen by the medical provider for future treatment," even though Plaintiff requested this. (*Id.*)

Subsequently, on November 24, 2020, "exactly one year from the first complaint," Plaintiff states that "absolutely nothing [had been] done since being triaged and diagnosed on [February 2, 2020]." (*Id.*, PageID.10–11.) Plaintiff further states that his "hernia had doubled in size," he had "greater more severe pain," and he was "passing out from the pain on the cell floors." (*Id.*) Despite these symptoms, Plaintiff states that "'all' medical requests for pain management or services were ignored," and "no treatment or pain management or services [had been] rendered unto Plaintiff." (*Id.*)

On December 4, 2020, Plaintiff "was issued a 'special accommodation notice' . . . for an abdominal binder." (*Id.*) Plaintiff learned "that the ordered x-rays were also canceled." (*Id.*) On December 8, 2020, Plaintiff submitted a healthcare request, asking that his x-ray be rescheduled. (*Id.*) Thereafter, Plaintiff received an x-ray on December 22, 2020. (*Id.*) Plaintiff's x-ray results were received on December 29, 2020, and he also had a medical appointment on that date. (*Id.*)

3

Plaintiff was "told [to] continue with [the] abdominal binder," however, Plaintiff states that he had not "received the abdominal binder nor pain medication prescribed even though [he] told healthcare [about his] extreme pain and need for pain medication." (*Id.*)

On December 31, 2020, Plaintiff submitted a healthcare kite "about not receiving the abdominal binder." (*Id.*) In response, Plaintiff was advised "that a chart review was requested to the medical provider ([his] doctor)." (*Id.*) On January 3, 2021, "Plaintiff was wheeled to medical in severe pain and a severe medical state." (*Id.*) Plaintiff was not prescribed pain medication. (*Id.*) Thereafter, on January 5, 2021, "Plaintiff submitted another kite complaining of extreme pain" and requesting a laxative. (*Id.*) Plaintiff's request was denied. (*Id.*) That same day, January 5, 2021, Plaintiff submitted another kite to medical services, "complaining of extreme pain that stopped him from being able to sit on [the] toilet, exercise and not move nor eat." (*Id.*, PageID.12.) "Plaintiff was denied by Defendant [Unknown Party #1]." (*Id.*) Plaintiff states that "no pain medication [wa]s prescribed as a result of [the] kite." (*Id.*) At some later point on January 5, 2021, Plaintiff was taken to health care services in a wheelchair "after being found on the floor crying in pain." (*Id.*) Plaintiff was "given a dose of liquid laxative," and an abdominal binder was "found in the closet." (*Id.*)

On the night of January 20, 2021, or the morning of January 21, 2021, Plaintiff was found on the floor of his cell "in extreme pain/in and out of consciousness." (*Id.*) "Once nursing staff arrived, Plaintiff had to beg and plead with nurse/officers to call 911." (*Id.*) Thereafter, Plaintiff was taken to the hospital and received emergency surgery, in which "6 inches of intestines w[ere] removed." (*Id.*) The surgeon at the hospital told Plaintiff that he "could have died if [he had not been] brought in [that day]." (*Id.*) Plaintiff remained in the hospital for five days.

4

Subsequently, on April 23, 2021, Plaintiff submitted a health care request form "seeking immediate medical treatment as the Plaintiff's hernia had re-ruptured/opened," and noting that he was in pain. (*Id.*) Plaintiff was advised that his chart would be sent to the doctor for review. (*Id.*) On May 20, 2021, Plaintiff submitted another health care request form, "complaining that the hernia [was] . . . growing massively and he [was] in extreme pain." (*Id.*) On October 8, 2021, Plaintiff had a second hernia surgery. (*Id.*, PageID.13.)

Without providing any specific dates, Plaintiff contends that Defendant Derrick "initiated the beginning of the misdiagnoses, while not doing anything to help." (*Id.*, PageID.9.) Plaintiff also contends that Defendant Derrick "was aware firsthand how much pain the Plaintiff was in but refused to prescribe anything to help." (*Id.*) Additionally, Plaintiff alleges that Defendant Derrick "watched [the] medical issue start as a little bump and get worse while not doing anything to help." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment, as well as his rights under state law. (*Id.*, PageID.13–15.) As relief, Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.14.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

5

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.9.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v.*

*Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages, as well as declaratory relief. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's § 1983 claims for monetary damages against Defendants.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (citation omitted). Here, Plaintiff seeks relief for past harm, and he does not allege an ongoing violation of federal law. Further, Plaintiff is no longer incarcerated at MBP, where the events underlying the complaint occurred. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Accordingly, for these reasons, Plaintiff's § 1983 claims against Defendants in their official capacities will be dismissed.

### B.    Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2

With respect to Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2, Plaintiff fails to allege facts showing how these Defendants were personally involved in the violations of his constitutional rights. (*See generally* Compl., ECF No. 1.) Where

7

a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Additionally, any "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Furthermore, Plaintiff's claims against these Defendants fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold these Defendants liable for the actions of their subordinates, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor

8

can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2 encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights.

For all of the reasons set forth above, Plaintiff fails to state a claim against Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2, and his claims against these Defendants will be dismissed.

### C. Fifth and Fourteenth Amendments

Plaintiff alleges that his right to due process under the Fifth and Fourteenth Amendments was violated because he did not receive a response to his grievances, the grievances were denied, or the grievances were not processed. (*See, e.g.*, Compl., ECF No. 1, PageID.8, 15.)

As an initial matter, the Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues employees of the MDOC. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

As to Plaintiff's Fourteenth Amendment due process claims, the courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Accordingly, for these reasons, Plaintiff's Fifth and Fourteenth Amendment due process claims will be dismissed.

### D. Eighth Amendment

With respect to remaining Defendants Suvanto, Derrick, and Unknown Party #1, Plaintiff alleges that these Defendants violated his Eighth Amendment rights by providing inadequate medical care. (*See, e.g.*, Compl., ECF No. 1, PageID.14.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

11

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

For the purposes of this opinion, the Court assumes, without deciding, that Plaintiff's hernia and related pain, as described in his complaint, satisfy the objective component of the relevant two-prong test.

As to the subjective prong, Plaintiff alleges that he had an appointment with Defendant Suvanto on February 2, 2020, and at the appointment, Defendant Suvanto "did a quick lower abdominal check using her hand and diagnosed that there was a hernia detected." (Compl., ECF No. 1, PageID.10.) Plaintiff "described to Defendant Suvanto the extreme pain he was in but wasn't given any treatment of the hernia nor any pain medication(s); nor told when he could be seen by the medical provider for future treatment," even though Plaintiff requested this. (*Id.*)

With respect to Defendant Unknown Party #1, Plaintiff alleges that he submitted a kite to medical services on January 5, 2021, "complaining of extreme pain that stopped him from being able to sit on [the] toilet, exercise and not move nor eat." (*Id.*, PageID.12.) Plaintiff states that he "was denied[, presumably, treatment,] by Defendant [Unknown Party #1]." (*Id.*) As to Defendant Derrick, Plaintiff contends that Defendant Derrick "initiated the beginning of the misdiagnoses,

13

while not doing anything to help," and Defendant Derrick "was aware firsthand how much pain the Plaintiff was in but refused to prescribe anything to help." (*Id.*, PageID.9.) Additionally, Plaintiff alleges that Defendant Derrick "watched [the] medical issue start as a little bump and get worse while not doing anything to help." (*Id.*)

Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Suvanto, Derrick, and Unknown Party #1 on initial review.

### E.     State Law Claims

Plaintiff alleges that Defendants were negligent and that their actions constituted medical malpractice.

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

With respect to Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2, because Plaintiff's federal claims against these Defendants will be dismissed,

14

the Court will dismiss Plaintiff's state law claims against these Defendants without prejudice. As to Defendants Suvanto, Derrick, and Unknown Party #1, because Plaintiff continues to have pending federal claims against these Defendants, the Court will exercise supplemental jurisdiction over his state law claims against Defendants Suvanto, Derrick, and Unknown Party #1.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Washington, Huss, Johnson, Caron, Wright, Foster, and Unknown Parties #2 will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims, as well as his Fifth and Fourteenth Amendment claims against remaining Defendants Suvanto, Derrick, and Unknown Party #1. Plaintiff's Eighth Amendment claims against Defendants Suvanto, Derrick, and Unknown Party #1 in their individual capacities remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 19, 2023                            /s/ Jane M. Beckering
                                                   Jane M. Beckering
                                                   United States District Judge