UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEONARD M. HICKMAN #577165,

        Plaintiff,

v.

HEIDI E. WASHINGTON, et al.,

        Defendants.
_____/

Case No. 2:23-cv-0002

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust administrative remedies against him. (ECF Nos. 19 (motion by Registered Nurse Suvanto) and 24 (motion by Defendant Derek Falk).)

State prisoner Leonard Hickman filed a verified complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights by failing to provide him with timely medical care and treatment. (ECF No. 1.)

Hickman's complaint named ten Defendants: Michigan Department of Corrections (MDOC) Director Washington, (2) Warden Huss, (3) Assistant Resident Unit Supervisor (ARUS) Johnson, (4) Grievance Coordinator (GC) Caron, (5) Unknown Party #1 (further identified as a nursing supervisor, (6) Registered Nurse

(RN) Suvanto, (7) RN Wright, (8) Unknown Foster, (9) Unknown Derrick,[1] and (10) Unknown Parties #2. The Court's screening opinion and judgment dismissed all claims against Washington, Huss, Johnson, Caron, Foster and unknown Parties #2 for failure to state a claim. (ECF No. 7, PageID.113, ECF No. 8.) The Court also dismissed the state law claims against these Defendants. The Court also dismissed, for failure to state a claim, Plaintiff's official capacity claims, as well as his Fifth and Fourteenth Amendment claims against remaining Defendants Suvanto, Derrick, and Unknown Party #1. (ECF No. 7, PageID.113.)

Plaintiff's Eighth Amendment claims against RN Suvanto, Unknown Derrick, and Unknown Party #1, in their individual capacities, were allowed to go forward. (*Id*.)

Although Unknown Party #1 remains in the case, the record indicates that this Defendant has not been served.

The other remaining Defendants – RN Suvanto and Unknown Derrick (alternatively identified as Derek Falk) – argue that Plaintiff failed to exhaust his administrative remedies with respect to his claims against them.

Hickman discussed his attempt to exhaust his administrative remedies in his complaint. Plaintiff stated:

---

[1] Attorney Nicholas Pillow filed an appearance on behalf of Unknown Derrick. Pillow then filed a motion for summary judgment on behalf of Nurse Practitioner (NP) Derek Falk. (ECF No. 24.) The Court assumes that NP Falk is the Defendant identified by Plaintiff as Unknown Derrick.

2

> **V. Exhaustion of legal remedies**
>
> The civil remedies of exhaustion of the civil procedures within the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997 e(a); Plaintiff Hickman #577165 made every attempt known to man at attempting to redress of grievance for these violations, was denied access to the exhausting requirements by the continual impeding of Defendants and their co-horts who conspired and aided & Abetted the other in the denial to respond to grievances, kites, request for Step II Appeal grievance, request for the warden @ MBP and Heidi E. Washington director of the Michigan Department of Corrections to intervene and supply Plaintiff with Step II appeal grievance form. Step II grievances are resolved at the Warden level. Step III grievance are resolved at the Directors (Heidi E. Washington) level. Defendant #1 Heidi Washington whom outright failed to investigate, respond or have internal investigation conducted at the MBP of the Defendant #2 Erica Huss (warden), thus, Plaintiff sought every available option he had at his disposal to No avail, in an attempt to exhaust these procedural remedies prior to bringing this complaint of action to this U.S. District Court. There was no further procedures available to Plaintiff at Marquette Branch Prison offered for Plaintiff to access, Plaintiff could not solve the problem, remedy with other solutions. Plaintiff requested a Step II grievance appeal form on 2-19-21, 2-22-21, 2-25-21, 3-1-21, and 3-17-21 (see attached exhibits). When Defendants failed to respond when it denied any such responses to grievance or kites. No such appeals were mailed or offered (see attached kites requesting Identifier Grievance No. MBP21020013412D1, as Plaintiff could not appeal the denial of the grievance appeal.

(ECF No. 1, PageID.13.)

Suvanto and Derrick argue that Plaintiff never named them in a Step I grievance that was exhausted and appealed through Step III of the grievance process. Plaintiff argues that he filed a Step I grievance that placed Defendants on notice that the grievance was against them. Plaintiff says that he was thwarted by the grievance coordinator from appealing the denial of his Step I grievance because the grievance coordinator ignored his repeated attempts and letters to obtain a Step II grievance form. In the opinion of the undersigned, Plaintiff's uncontested allegation that he was thwarted from appealing the denial of his Step I grievance creates a genuine issue of material fact.

3

That initial conclusion does not end the analysis. Suvanto and Derrick argue that even if Plaintiff had exhausted his grievance through Step I, his grievance would not have exhausted any claims against them because he failed to name them in his Step I grievance for conduct alleged against them in the complaint. The undersigned has reviewed the relevant documents and agrees with this assertion. The grievance Plaintiff filed at Step I would not have exhausted his administrative remedies. Thus, even if Plaintiff's attempt to exhaust his administrative remedies were not thwarted, he would not have exhausted his administrative remedies.

Accordingly, it is recommended that the Court conclude that no genuine issue of material fact exists, thus entitling Defendants to summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one

---

[2] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

---

affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

5

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement

6

"afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).

Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around

8

and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

**IV. Analysis**

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

It is undisputed that Plaintiff never appealed a grievance through Step III of the grievance procedures. Plaintiff, however, is not arguing that he appealed a grievance through Step III. Plaintiff asserts that after his Step I grievance was denied, his attempt to exhaust was thwarted by the grievance coordinator, who refused to provide him with a Step II grievance appeal form. Defendants argue that even if that is true, Plaintiff's grievance failed to exhaust the claims he asserted in his complaint against them.

As an initial matter, Plaintiff attached a copy of his Step I grievance – **MBP 21-02-00134-12D1** – and the associated response to his complaint. This Step I grievance is shown below.

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247 10/94
CSJ-247A

Date Received at Step I: 2-3-21
Grievance Identifier: MBP/21/02/90V/34/12A11

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Leonard Hickman | 577165 | MBP | G-B19 | January 26th 2021 | Feb 1st 2021 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? Jan 26th, 2021
If none, explain why. I talked to a supervisor, & the deputy warden ignored me when I tried to stop him during a round.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

I have been forced to suffer in pain due to Negligence of Duty by the health care @ marquette branch Prison (including nurses, & the doctor). I originally kited that I had a bump in my stomach area (mass) growing back in Feb 2019. I recieved a response saying I was added to the callout list, only to be never called out or talked to. The facility blantely disregarded my request. Then 9 months later I obviosely realized I was not going to recieve any medical services and rekited in Nov 2019. At this point, the bump had grown signifacally larger & became very painful. I could not sit up directly, hurt when I went up stares. I would have episodes once or twice a week where I was in so much pain I could not move at all & had to curl up in a ball requesting medical attention from my unit officers & nurses. Nothing was done multiple times. I would kite (which I have all of them) telling the medical staff I was in severe pain.

Grievant's Signature: [signature]

**RESPONSE** (Grievant Interviewed?) ☐ Yes ☒ No If No, give explanation. If resolved, explain resolution.

The grievant's electronic medical record was reviewed. On 11/25/2020 a kite was recieved stating ongoing issue with hernia. Grievant was seen/assessed outside by RN & scheduled with MD. An x-ray was scheduled. MD noted protruding but easily reducable. Stool softners ordered. Grievant was seen several times by Healthcare before he had emergency surgery for small bowel obstruction resulting in a repair. He was seen by provider 1/25/21 for return from hospitalization. Grievant reports feeling o.k. & able to move without difficulty. Pain meds ordered x 3 days. He was seen on follow-up on 1/28/21 stating "feeling better". Your allegation that Health care was negligent can not be substantiated. You were evaluated & treated as deemed appropriate based on your clinical presentation. You may always kite or notify custody with any complaints.

Respondent's Signature: D. Carlson    Date: 2/18/2021    Reviewer's Signature: BJames RN3    Date: 2/18/21
Respondent's Name (Print): D Carlson    Working Title: RN3    Reviewer's Name (Print): BJames RN3    Working Title: RN3

Date Returned to Grievant: 2-18-21
If resolved at Step I, Grievant sign here. Resolution must be described above.
Grievant's Signature: _____ Date: _____

(ECF No. 1-1, PageID.17.)

Additionally, Plaintiff attached to his complaint a Step I grievance form that he filled out on March 2, 2021, stating an incident date of February 23, 2021. (ECF No. 1-20, PageID.36.) There is no grievance identifier on the copy provided by Plaintiff. Plaintiff's grievance states that he is being denied access to the grievance process by the Grievance Coordinator's refusal to provide him with a Step II grievance form. (*Id.*) Plaintiff says that he made multiple requests for a Step II grievance form, but he received no response.

Plaintiff also attached a letter to Grievance Coordinator Caron dated February 19, 2021, requesting a Step II grievance form. (ECF No. 1-38, PageID.55.) He made a second request on February 22, 2021 (ECF No. 1-39, PageID.56) and a third request on February 25, 2021. (ECF No. 1-40, PageID.57.) Then on February 27, 2021, Plaintiff notified ARUS Johnson that his requests to Grievance Coordinator Caron for a Step II grievance form went unanswered, and he requested help in obtaining a Step II grievance form. (ECF No. 1-41, PageID.58.) Plaintiff then wrote to Warden Huss on February 28, 2021, asking for assistance in obtaining a Step II grievance form because the Grievance Coordinator refused to respond to his requests for a form. (ECF No. 1-42, PageID.59.) On March 1, 2021, Plaintiff sent a letter to MDOC Director Washington explaining that despite sending multiple requests to Grievance Coordinator Caron for a Step II grievance form, he was never provided with a response to any of his requests. On the same date, he made a fourth request for a Step II grievance form to Grievance Coordinator Caron. (ECF No. 1-44, PageID.61.) On March 17, 2021, Plaintiff wrote Grievance Coordinator Caron for the fifth and

12

final time requesting a Step II grievance form. (ECF No. 1-45, PageID.62.) Plaintiff alleges that he never received a response to his numerous requests for a Step II grievance form.

In the opinion of the undersigned, Plaintiff has shown that there exists a genuine issue of material fact regarding whether he was thwarted from exhausting grievance **MBP-21-02-0134-12d1** because he has presented uncontested evidence showing that his requests for a Step II grievance form were ignored by prison officials.

That conclusion, however, is not the end of the analysis.

Defendants argue that even if Plaintiff had exhausted grievance **MBP-21-02-0134-12d1**, that grievance failed to exhaust any of the claims that Plaintiff asserted against Defendants. Plaintiff alleges in his complaint that he made a request for medical care (possibly in late 2019 or early 2020), and a couple days later he received a response from RN Suvanto. (ECF No. 1, PageID.9-10.) He was not seen for treatment until February 2, 2020. (*Id.*, PageID.10.) At that time, Plaintiff alleges that RN Suvanto told him that they had made a mistake by not getting him into health care sooner and she quickly discovered that he had a hernia. (*Id.*) Plaintiff makes no other allegations regarding RN Suvanto in his complaint. Plaintiff filed his grievance approximately one year later, and although he failed to name RN Suvanto, he did state the grievance was against "nurses." (ECF No. 1-1, PageID.17.) As shown above, Plaintiff's Step I grievance has an incident date of January 26, 2021. His complaint, however, asserts conduct against RN Suvanto that occurred no later than February 2, 2020. The Step I grievance also does not discuss RN Suvanto's statement

13

to Plaintiff or the examination that she conducted on February 2, 2020. The Sixth Circuit decision in *Mattox*, 851 F.3d. 596, requires a prisoner to exhaust the specific factual claim asserted in the complaint. In the opinion of the undersigned, Plaintiff failed to exhaust any claim asserted in his complaint against RN Suvanto.

Plaintiff's complaint makes no allegations against Nurse Practitioner Derek Falk involving a delay in receiving medical care. At best, Plaintiff identifies "Defendant, #9 – (unknown John Doe) Derrick" as his attempt to identify NP Falk. Plaintiff alleges:

> 12.) Defendant, #9 - (unknown John Doe) Derrick - is a medical provider doctor who were at all times attached to this claim. This doctor inititated the beginning of the misdianoses, while not doing anything to help. Defendant Derrick was aware first hand how much pain the Plaintiff was in but refused to prescribe anything to help. Defendant watched medical issue start as a little bump and get worse while not doing anything to help. He acted as doctor at all times of record at Marquette Branch Prison as an employee.

(ECF No. 1, PageID.9.) Although, NP Falk is not a doctor, it appears that Plaintiff intended to identify NP Falk as Defendant # 9.

Nevertheless, Plaintiff failed to assert any specific allegations against NP Falk in his complaint other than asserting that he was the cause of the initial misdiagnosis and that he refused to prescribe anything to help. Plaintiff has not provided the dates of his encounter with NP Falk. Although it is unclear, it appears that Plaintiff's interaction with NP Falk did not occur on January 26, 2021, or anytime near that date. Plaintiff's grievance asserts that he was not being seen by healthcare and it

14

appears that his claim against NP Falk, as alleged in his complaint, is limited to allegations that NP Falk misdiagnosed his condition and failed to prescribe medication. That is not what grievance **MBP-21-02-0134-12d1** is about. Also, Plaintiff's grievance with a January 21, 2021, incident date is about his assertion that he was delayed in receiving medical care. The grievance does not mention any treatment that was provided to Plaintiff by any healthcare provider or any misdiagnosis that he received. In the opinion of the undersigned, Plaintiff's grievance failed to address any potential claim against NP Falk that arguably could be ascertained from a fair reading of the complaint.

## V.  Recommendation

Accordingly, the undersigned respectfully recommends that this Court grant Defendants' motions for summary judgment and dismiss this case due to Plaintiff's failure to exhaust his administrative remedies.

Dated:   November 8, 2024                                  /s/ *Maarten Vermaat*
                                                          MAARTEN VERMAAT
                                                          U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).